# No. 25-1563

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

_____

**PAUL BRUYEA,**

**Plaintiff-Appellee,**

v.

**UNITED STATES,**

**Defendant-Appellant**

_____

**ON APPEAL FROM THE JUDGMENT OF THE
UNITED STATES COURT OF FEDERAL CLAIMS,
No. 23-766; JUDGE MATTHEW H. SOLOMSON**

_____

**RESPONSE BRIEF FOR APPELLEE**

_____

**STUART E. HORWICH**
**20 Old Bailey, 5th Floor**
**London  EC4M 7AN**
**United Kingdom**
**+44 20 8057 8013**

**MAX REED**
**Suite 900 1788 West Broadway**
**Vancouver, British Columbia**
**Canada V6J 1Y1**

**Counsel for Appellee**

**September 2, 2025**

# CERTIFICATE OF INTEREST

(1)     The full name of all parties represented by counsel is:  Paul Bruyea.

(2)     The person named in Section (1) is a real party in interest.

(3)     There are no affiliated entities associated with the person listed in section (1) above.

(4)     There are no other law firms, partners or associates who have not entered an appearance in the appeal who appeared in the Court of Federal Claims or are expected to appear in this Court.

(5)     No further disclosure is required under Federal Rules of Appellate Procedure 26.1(c) or (d).

## STATEMENT OF RELATED CASES

There are no related or prior cases, other than the case at bar, that meet the criteria under Federal Circuit Rule 47.5.

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.    **The Standards of Treaty Interpretation Favor a Result That Avoids Double Taxation.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

II.   **The Canada Treaty Provides for a Foreign Tax Credit Against the NIIT.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

   A. **The Text of Article XXIV(1) provides for a Treaty-Based Foreign Tax Credit.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

      1. **The Defendant's Argument Regarding the Scope of the U.S. Law Limitation Renders the General Principle Language Superfluous** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

      2. **The Defendant Offers No Coherent Analysis of the Scope of the U.S. Law Limitation** . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

      3. **The U.S. Law Limitation Determines the Quantum of the Treaty-Based Credit and Does Not Restrict the United States Tax Against Which Such Credit Is Available** . . . . . .17

      4. **Conclusion.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

   B. **The plain text of Article XXIV(4)(b) also provides a foreign tax credit against the NIIT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

III.  **The Extrinsic Materials Interpreting the Treaty Support the Taxpayer's Position.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

   A.    **The Canadian Government's View that A Treaty-Based Credit Should Be Allowed Is Entitled to Significant Weight.** . . . . . . . 25

   B.    **Other Authorities Support a Treaty-Based Credit To Offset the NIIT.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

# TABLE OF AUTHORITIES

## Case Law

*Air France v. Saks*, 470 U.S. 392 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . .4, 25

*Bacardi Corp. of America v. Domenech*, 311 U.S. 150 (1940). . . . . . . . . . . . .5

*BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25 (2014) . . . . . . . . . . . . . .4

*Christensen v. United States,* 168 Fed. Cl. 263 (2023) . . . . . . . . . . . . . 13, 22, 23

*El Al Israel Airlines v. Tseng*, 525 U.S. 155 (1999) . . . . . . . . . . . . . . . . . . 5, 25

*Estate of Ballard v. Commissioner,* 85 T.C. 300 (1985). . . . . . . . . . . . . . . . . 11

*Haver v. Comm'r*, 444 F.3d 656 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . 23

*Kappus v. Comm'r*, 337 F.3d 1053 (D.C. Cir. 2003). . . . . . . . . . . . . . . . . 22, 23

*Kim v. United States*, 2023 WL 2313547 (C.D. Cal. 2023) . . . . . . . . . . . . . . .13

*Kolovrat v. Oregon*, 366 U.S. 187 (1961) . . . . . . . . . . . . . . . . . . . . . . . . 5, 25

*Lozano v. Montoya Alvarez*, 572 U.S. 1 (2014) . . . . . . . . . . . . . . . . . . . . . . .4

*Medellin v. Texas*, 552 U.S. 491 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*O'Connor v. United States*, 479 U.S. 27 (1986) . . . . . . . . . . . . . . . . . . . . . 26

*Olympic Airways v. Husain*, 540 U.S. 664 (2004). . . . . . . . . . . . . . . . . . . . . 4

*Sullivan v. Kidd*, 254 U.S. 433 (1921) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*Sumitomo Shoji America Inc. v Avagliano*, 457 U.S. 176 (1982) . . . . . . . . . . 26

*Toulouse v. Comm'r*, 157 T.C. 49 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*United States v. Choctaw Nation*, 179 U.S. 494 (1900) . . . . . . . . . . . . . . . . .4

*United States v. Stuart*, 489 U.S. 353 (1989) . . .. . . . . . . . . . . . . . . . . . . . . 5

*Water Splash v. Menon*, 581 U.S. 271 (2017) . . . . . . . . . . . . . . . . . . . . . . 10

*Wright v. Henkel*, 190 U.S. 40, 57 (1903) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Xerox Corp. v. United States*, 41 F.3d 647 (1994) . . . . . . . . . . . . . . . . . . . . . . . .4

## Treaties

*Convention Between the Government of the United States of America and the Government of the Republic of Croatia for the Avoidance of Double Taxation and the Prevention of Tax Evasion With Respect to Taxes on Income* . . . . . . . . 7

*The Treaty (Convention Between the United States of America and Canada with Respect to Taxes on Income and Capital, signed on September 26, 1980, as amended by protocols in 1983, 1984, 1995, 1997, and 2007), T.I.A.S. No. 11,087.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .passim

## Statutes

Internal Revenue Code (26 U.S.C.)

    Code Section 59. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    Code Section 901 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 18

    Code Section 904. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

    Code Section 1411 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 2

## Miscellaneous

Explanation of the Proposed Income Tax Treaty Between the United States and Canada, *Joint Comm. On Taxation,* JCS-48-41 (1981). . . . . . . . . . . . . . . . . . . 18

Treasury Department Explanation of the Model Income Tax Convention – 2006. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

Treasury Department Technical Explanation of the Convention Between the Government of the United States of America and Canada with Respect to Taxes on Income and on Capital Signed at Washington, D.C. on September 26, 1980, as Amended by the Protocol Signed at Ottawa on June 14, 1983 and the Protocol Signed at Washington on March 28, 1984 . . . . . . . . . . . . . . . 17, 18, 19

## Other Materials

Blanchard, The Tax Court's Erroneous Decision in *Toulouse*, 50 *Tax Mgm't Int'l J.*, No. 10 (Oct 1, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

Gould, "The Tax Court's Flawed Analysis in *Toulouse* Should Be Challenged", *Tax Notes International*, vol. 103, p. 1695-1696 (Sept 27, 2021). . . . . . . . . . . 13

Rosenbloom and Shaheen, "*Toulouse*: No Treaty-Based Credit?", *Tax Notes International*, vol. 104, pp. 417-422 (Oct. 25, 2021) . . . . . . . . . . . . . . . . . . . 13

## STATEMENT OF THE ISSUES

Whether the Court of Federal Claims correctly determined that the income tax treaty between the United States and Canada (the "Canada Treaty")[1] allows a U.S. citizen resident in Canada to claim a treaty-based foreign tax credit against the net investment income tax (the "NIIT") imposed by Section 1411 of the Internal Revenue Code of 1986 (26 U.S.C. – the "Code").

---

[1]      The Treaty (Convention Between the United States of America and Canada with Respect to Taxes on Income and Capital, signed on September 26, 1980, as amended by protocols in 1983, 1984, 1995, 1997, and 2007), T.I.A.S. No. 11,087.

## SUMMARY OF ARGUMENT

For over 80 years, Canada and the United States have had income tax treaties in place, with the primary goal of preventing double taxation of the same income. Article XXIV of the Canada Treaty, entitled "Elimination from Double Taxation," advances this purpose by providing that certain taxes imposed by each country are eligible for a foreign tax credit – a "treaty-based foreign tax credit" – even if otherwise not permitted under the internal laws of either country.

In 2010, Congress enacted the net investment income tax, the NIIT, which imposes a 3.8 percent tax on certain investment income generated by U.S. citizens (including those living abroad) and U.S. residents. Code Sec. 1411. For the 2015 tax year at issue, the Appellee, Paul Bruyea (the "Taxpayer") was subject both to (1) Canadian taxation by virtue of his Canadian tax residency and (2) U.S. taxation by virtue of his U.S. citizenship. In that year, he sold real property located in Canada and paid more Canadian federal and provincial income taxes on that real estate gain than what he would have owed in total U.S. income tax and NIIT. As the Code does not provide a foreign tax credit – a "Code-based foreign tax credit" – against the NIIT, the IRS collected the NIIT on that same investment income on which he paid tax to Canada, resulting in double taxation. Here, the Taxpayer claims entitlement to a treaty-based foreign tax credit under Article XXIV of the Canada Treaty to offset the NIIT.

2

The Court of Federal Claims agreed with the Taxpayer and the Canadian tax authorities that a treaty-based foreign tax credit is allowed to offset the NIIT. The lower court correctly interpreted the text of the Canada Treaty to achieve its avowed aim of avoiding double taxation that would otherwise occur under the Defendant's reading of the Treaty.  The text of the Canada Treaty allows for a foreign tax credit against the NIIT and the Defendant's reading to the contrary is inconsistent, lacks a unifying principle, and violates basic rules of textual interpretation.

# ARGUMENT

## I.  The Standards of Treaty Interpretation Favor a Result That Avoids Double Taxation.

The proper interpretation of Article XXIV of the Canada Treaty "must begin * * * with the text of the treaty and the context in which the written words are used." *Air France v. Saks*, 470 U.S. 392, 296-97 (1985).  *See also Xerox Corp. v. United States*, 41 F.3d 647, 652 (Fed Cir. 1994) ("In construing a treaty, the terms thereof are given their ordinary meaning in the context of the treaty and are interpreted, in accordance with that meaning, in the way that best fulfils the purpose of the treaty.").

The goal is to derive from the treaty text an outcome that accords with the shared expectations of the sovereign nations that entered into the agreement.  A treaty is a contract between nations such that its interpretation is first and foremost "a matter of determining the parties' intent."  *See BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 37 (2014) (citing *Air France v. Saks*, 470 U.S. at 399; *Sullivan v. Kidd*, 254 U.S. 433, 439 (1921); *Wright v. Henkel*, 190 U.S. 40, 57 (1903)); *Lozano v. Montoya Alvarez*, 572 U.S. 1, 11 (2014) (citing *Medellin v. Texas*, 552 U.S. 491, 505 (2008); *United States v. Choctaw Nation*, 179 U.S. 494, 535 (1900)).  It is therefore the Court's "responsibility to read the treaty in a manner consistent with the shared expectations of the contracting parties." *Lozano v. Montoya Alvarez*, 572 U.S. at 12 (quoting *Olympic Airways v. Husain*, 540 U.S. 664, 650 (2004)).

4

As the Court of Federal Claims noted (Appx33), in determining the shared expectation of the parties, the views of the foreign counterpart are accorded great weight. *El Al Israel Airlines v. Tseng,* 525 U.S. 155 (1999); *Kolovrat v. Oregon*, 366 U.S. 187 (1961). Moreover, treaties should be liberally interpreted to establish their intended purpose, which in the case of the Canada Treaty, is the avoidance of double taxation. Where two interpretations are equally plausible, the more liberal interpretation is preferred. *United States v. Stuart*, 489 U.S. 353, 368 (1989); *Bacardi Corp. of America v. Domenech*, 311 U.S. 150, 163 (1940).

As demonstrated below, the purpose of Article XXIV of the Canada Treaty as demonstrated by its text and the extrinsic materials that aid in its interpretation, is best fulfilled by allowing for a treaty-based foreign tax credit against the NIIT, avoiding the double taxation to which the Defendant's textually and purposively implausible interpretation would give rise.

## II.  The Canada Treaty Provides for a Foreign Tax Credit Against the NIIT.

Article XXIV(1) contains a general rule that allows for a treaty-based foreign tax credit. Article XXVI(4)-(6) contains specific rules that independently allow for a treaty-based foreign tax credit for U.S. citizens living in Canada, such as the Taxpayer, who are otherwise subject to taxation in both countries on their worldwide income. As demonstrated below, each of these

provisions allows the Taxpayer to offset the Canada taxes he incurred against the NIIT, thereby avoiding double taxation.

### A. The Text of Article XXIV(1) provides for a Treaty-Based Foreign Tax Credit.

Article XXIV(1) of the Canada Treaty provides, in relevant part, that

> <u>subject to the provisions of paragraph 4, 5 and 6</u>, double taxation shall be avoided as follows:  *In accordance with the provisions and subject to the limitations of the law of the United States* **(as it may be amended from time to time without changing the general principle hereof***)*, the United States shall allow to a citizen or a resident of the United States as a credit against the United States tax on income the appropriate amount of income tax paid or accrued to Canada * * *.*"

Emphasis added.  The text of Article XXIV(1) can be broken down into five key parts:

1. The underlined portion modifies the general rules contained in Article XXIV(1) with more specific rules for U.S. citizens who are Canadian tax residents. These provisions are discussed further in section (B) below.

2. The non-emphasised portion indicates that the purpose of Article XXIV(1) is to avoid double taxation.

3. The italicized portion is referred to by the Court of Federal Claims as the "U.S. Law Limitation."

4. The language in bold is referred to as the "General Principle" requirement,[2] that the parties agree is the elimination of double taxation.

---

[2]    The Court of Federal Claims included the first part of the parenthetical "(as it may be amended from time to time)" as part of the U.S. Law Limitation.

5.  The highlighted portion is the Operative Language giving rise to a treaty-based foreign tax credit.

In interpreting Article XXIV(1), certain other Treaty and Code-based provisions are relevant and not in dispute.  Article III defines the term "United States tax" as, with certain exceptions not relevant here, those covered in Article II(2)(b) of the Treaty.  Article II(b) covers "Federal income taxes imposed by the Internal Revenue Code of 1986."  Article II(3) indicates that the definition of United States tax is not fixed at the time the Canada Treaty was ratified as the treaty "shall also apply to:  (a) any taxes identical or substantially similar to those taxes to which the Convention applies under [Article II(b)]."  Based on these provisions, the parties agree, and the Court of Federal Claims correctly found, that the NIIT falls within the definition of "United States tax."

The parties further agree that there is no *Code*-based foreign tax credit to offset the NIIT.  The Code allows for a foreign tax credit against taxes imposed by Chapter 1 of the Internal Revenue Code, and the NIIT is contained in its own Chapter 2A.[3]  Thus, and this point is essential, the definition of "United States

---

From a grammatical standpoint and for additional clarity, the Taxpayer has kept the entire parenthetical as part of the General Principle language.

[3]     It follows that certain taxpayers, in particular those not benefiting from the Treaty, may pay foreign tax and the NIIT on the same income without being able to offset the NIIT, giving rise to double taxation.

tax" in the Canada Treaty is indisputably wider than U.S. income taxes offsetable by the Code-based foreign tax credit.

There also does not appear to be a disagreement that, absent the U.S. Law Limitation language in Article XXIV(1) ("[i]n accordance with the provisions and subject to the limitations of the law of the United States"), a treaty-based foreign tax credit would be allowed against the NIIT. Following the plain text of the Operative Language, "the United States shall allow" to the Taxpayer a treaty-based foreign tax credit against "the United States tax on income", which includes the NIIT, equal to "the appropriate amount of income tax paid or accrued to Canada."

The Defendant, however, argues that the U.S. Law Limitation overrides that result. According to the Defendant, the U.S. Law Limitation precludes a treaty-based foreign tax credit where one is not available under the Code. This would mean that while the Operative Language contained in Article XXIV(1) may grant the Taxpayer a treaty-based foreign tax credit, the U.S. Law Limitation in the first part of Article XXIV(1) takes away that benefit, resulting in double taxation.

The Defendant's position is wrong. Not only does the Defendant's interpretation fail basic textual interpretation tenets, but the Defendant cannot maintain a consistent approach to the scope of the U.S. Law Limitation without rendering Article XXIV(1) meaningless. The only textually plausible interpretation is that the U.S. Law Limitation incorporates statutory

8

computational rules for determining the proper quantum of the treaty-based credit.

### 1. The Defendant's Argument Regarding the Scope of the U.S. Law Limitation Renders the General Principle Language Superfluous

As indicated above, the Defendant accepts that the Operative Language of Article XXIV(1) would allow a treaty-based foreign tax credit but, according to the Defendant, "any foreign tax credit authorized by the Treaty must be 'in accordance with, and 'subject to' [the] same provisions and limitations of the Code." (Def. Br. at 25.)  This Defendant's circular argument, however, would read the General Principle language "as amended from time to time without changing the general principle hereof" out of the Treaty.

The General Principle, the parties agree, is the retention of a foreign tax credit to future enacted legislation.  *See* United States Model Income Tax Convention of Sept. 20, 1996, Technical Explanation, at Article 23, Paragraph 1 ("The credit under the Convention is allowed in accordance with the provisions and subject to the limitations of U.S. law * * * so long as the general principle of this Article, *i.e.*, the allowance of a credit, is retained.")  Either, as the Court of Federal Claims held, a later enacted United States income tax covered by the Treaty is eligible for a treaty-based credit under the General Principle wording where a later enacted United States tax is not otherwise eligible for a Code-based foreign tax credit, or the treaty-based credit is always eliminated by the U.S. Law Limitation.  If it is always eliminated, then the General Principle

9

language has no meaning or effect and therefore would be superfluous, an untenable proposition. *See Water Splash, Inc. v. Menon*, 581 U.S. 271, 277-278 (2017) (treaty terms should be interpreted as having meaning).[4]

Defendant argues that "[t]he U.S. law that applied when the Treaty was signed in 1980 restricted the foreign tax credit to offsetting Chapter 1 taxes, and it does the same now."  (Def. Br. at 20.)  This is patently incorrect – the definition of "United States tax" in the Treaty is indisputably wider than the Chapter 1 taxes.  The General Principle language requires the allowance of a treaty-based foreign tax credit to be available against any later-enacted "United States tax", whether such United States tax falls within Chapter 1 or another chapter of the Code.  The key requirement for an offsetable later-enacted "United States tax" is that it falls within the Article III Treaty definition.  The Defendant does not point to a single instance in the Treaty or, indeed, extrinsic sources that limits the United States taxes to those contained in Chapter 1 of the Code.

To be sure, United States taxes offsetable by a treaty-based credit that existed in 1980 were only Chapter 1 taxes.  However, the General Principle language and the dynamic Article II(b) and Article III definitions of United

---

[4]    Ironically, the Defendant cites *Water Splash* in support of flawed analysis (discussed below) on the meaning of other paragraphs in Article XXIV.  *See* Def Br. at 28 ("treaties should not be interpreted in a manner that makes terms meaningless.")  The Defendant fails to apply the *Water Splash* holding to its analysis of Article XXIV(1).

10

States tax contemplated that other U.S. taxes could fall within the scope of the Treaty. The Defendant's interpretation thus cannot be squared with the plain language of Article XXIV(1) and its reliance on the Treaty definitions of Article II(b) and Article III. To do so would be to read the General Principle language out of the Treaty, thereby violating a fundamental canon of treaty interpretation.

### 2. The Defendant Offers No Coherent Analysis of the Scope of the U.S. Law Limitation

The Operative Language of Article XXIV(1) provides a treaty-based foreign tax credit that is indisputably broader than a Code-based foreign tax credit and would allow a foreign tax credit to offset the NIIT. Articles XXIV(3), (4), (5) and (6) broaden the scope of a treaty-based foreign tax credit beyond what is available under the Code.[5] The Defendant agrees that the U.S. Law Limitation would not eliminate those benefits yet asserts that the expanded definition of "United States tax" in Article XXIV(1) does not provide for a treaty-based foreign tax credit against the NIIT. The Court of Federal Claims

---

[5]    Aside from Articles XXIV 3-7, the Canada Treaty contains other examples of treaty-based foreign tax credits not available under the Code. Article XXIV(8) obliges the United States to provide a foreign tax credit for a Canadian capital tax (a tax on the total cash balance of a corporation independent from its income), that would not be creditable under Code Section 901 as it is not a tax on income. Article XXIX B(7) provides a credit against the U.S. federal estate tax for the Canadian income tax that is triggered upon the death of an individual, which would normally not be creditable. *Estate of Ballard v. Commissioner*, 85 T.C. 300 (1985). A U.S. corporation can claim an indirect foreign tax credit for taxes paid by a 10 percent or greater owned Canadian company under Article XXIV(1), which accorded with U.S. domestic law at the time the Canada Treaty was signed. That statutory credit is no longer available, but the right to a treaty-based credit remains.

could not find any principled rationale for reading the U.S. Law Limitation to apply to Paragraph 1 of Article XXIV, but not to other paragraphs in that same article ("why is the Treaty-based credit Mr. Bruyea claims pursuant to Paragraphs 1 and 4 of Article XXIV any different than what is permitted in Paragraphs 3-6?").  Appx19.

On appeal, in its effort to respond to the lower court's rhetorical question of why the U.S. Law Limitation sometimes applies and sometimes does not, the Defendant states:  "correctly understood, however, paragraphs 3, 4, 5, and 6 further support the government's interpretation that the Treaty authorizes a credit only in accordance with and subject to the limitations of the Code, as stated in paragraph 1." (Def. Br. at 26.)  To support this assertion, the Defendant begins with the self-evident statement that "the treaty parties were free to agree adjustments to the Code's sourcing rules as they deemed appropriate."  (Def. Br. at 29.)  The Defendant then asserts that "the mere fact that the treaty parties agreed to some adjustments that differ from specific Code provisions in no way negates the general rule in paragraph 1 that the allowance of the credit is otherwise governed by the Code."  (*Id*.)  In essence, the Defendant states that the treaty parties can agree to a wider treaty-based foreign tax credit, but where they do not explicitly do so, the U.S. Law Limitation applies.

Even if that conclusion were correct, it would do nothing to address the Court of Federal Claims' rhetorical question – paragraphs 3, 4, 5 and 6 provide foreign tax credits that the Code does not.  But so too does the Operative

Language in paragraph 1, which specifically provides for a treaty-based foreign tax credit against "the United States tax on income" (which by definition includes the NIIT) and therefore also adds to the Code-based foreign tax credit rules that are otherwise limited to U.S. taxes contained in Chapter 1. The Defendant provides no reason that U.S. Law Limitation should apply only to the final clause of paragraph 1, but not to paragraphs 3, 4, 5, and 6.[6] Taken to its logical conclusion, the Defendant's position is that the U.S. Law Limitation makes the Treaty credit equal to the Code credit in all circumstances, which

---

[6]     The Defendant correctly states that the Court of Federal Claims in *Christensen v. United States, 163 Fed. Cl. 263* (2023), the Tax Court in *Toulouse v. Comm'r*, 157 T.C. 49 (2021), a district court in *Kim v. United States*, 664 F. Supp. 3d 1062 (C.D. Cal 2023) have held that the U.S. Law Limitation precludes a treaty-based foreign tax credit. The *Christensen* case is the companion case to the case at bar and briefing before this Court includes fundamental critical analysis of that element of the lower court's decision. *Christensen* found for the taxpayer on the ground that the U.S. Law Limitation language does not appear in the treaty paragraphs relating to a U.S. citizen resident in the treaty partner (the parallel paragraphs to paragraphs 4-6 of the Article XXIV of the Canada treaty). The *Toulouse* and *Kim* decisions, among other errors, did not analyze the U.S. Law Limitation's relationship to other paragraphs in the relevant treaties and simplistically concluded, without analysis, that this limitation bars a treaty-based foreign tax credit. Scholarly articles have criticized the decision in *Toulouse*. *See, e.g.,* Rosenbloom & Shaheen, *Toulouse*: No Treaty-Based Credit?, 104 *Tax Notes Int'l* 417 (Oct. 25, 2021); Kim Blanchard, The Tax Court's Erroneous Decision in Toulouse, *Tax Mgmt. Int'l J.* (Oct. 1, 2021); Jeffrey Gould, The Tax Court's Flawed Analysis in *Toulouse* Should Be Challenged, 103 *Tax Notes International* 1695 (Sept. 27, 2021).

cannot be reconciled with the fact that the Canada Treaty offers credits

unavailable in the Code.[7]

The patent inconsistency of the Defendant's argument is perhaps most

starkly illustrated where it states

> as another example, paragraph 7 [of Article XXIV] broadens the foreign
> taxes that are creditable under the Treaty beyond the national taxes
> described in Article II of the Treaty to include sub-national taxes * * *
> that are 'substantially similar' to the national taxes, even if the sub-
> national taxes would not qualify for the foreign tax credit under the Code.

(Def. Br. at 34; *see also* Def. Br. at 39-42.)  Article XXIV(1) provides (after the

U.S. Law Limitation) the Operative Language that:  "the United States shall

allow to a citizen or a resident of the United States as a credit against the United

States tax on income the appropriate amount of income tax paid or accrued to

Canada" (emphasis added).

The parties agree that United States tax includes the NIIT and that Article

XXIV(7) would expand the Canada taxes that are creditable to include, say, a

---

[7]     For example, in the most recently negotiated tax treaty between the
United States and Croatia, the foreign tax credit article (Article 23(2)) provides
that the United States shall allow a foreign tax credit "to the extent allowed
under the law of the United States (as it may be amended from time to time)."
Convention Between the Government of the United States of America and the
Government of the Republic of Croatia for the Avoidance of Double Taxation
and the Prevention of Tax Evasion With Respect to Taxes on Income (the
"Croatia Treaty"), This differs significantly from the wording in the Treaty
which contains both the U.S. Law Limitation and the General Principle
provisions.  The absence in the Croatia Treaty of such provisions demonstrates
that when treaty partners intend that a treaty-based foreign tax credit will not be
allowed, they are perfectly capable of drafting accordingly.

British Columbia provincial tax otherwise not creditable under the Code (highlighted green). The parties further agree that the U.S. Law Limitation does not eliminate a treaty-based foreign tax credit for the British Columbia tax against "United States tax" (highlighted yellow). However, the Defendant asserts that the U.S. Law Limitation does limit "United States tax" to exclude the NIIT. According to the Defendant, the U.S. Law Limitation applies to determine which United States taxes are offsetable, but does not operate in the very same clause – the Operative Language clause – to determine which Canada taxes are creditable. Somehow, according to the Defendant, Article XXIV(7) overrides the U.S. Law Limitation but Articles II(2)(b) and II(3) do not. No rationale is given for contorting the Operative Language clause in this manner and the Taxpayer can only conclude, as the Court of Federal Claims did, that the Defendant's "explanation in a nutshell amounts to this: the Treaty governs unless it doesn't." Appx23.

The Defendant nonetheless doubles down on its hopeless argument that Article XXIV(7) supports its position in this case. The Defendant states that

> Contrary to the [Court of Federal Claims'] view, the fact that the signatories agreed to some modifications that differ from the Code provisions does not negate the general rule in paragraph 1 that the Code's provisions—all those unaffected by the modifications—continue to apply and govern the allowance of the credit. (Appx30-31.) And, those provisions include the Code's requirement that a foreign tax credit can be applied only against income taxes imposed in Chapter 1 of the Code.

Def Br. at 41.

But Articles II(3) and III(1)(d) provide that "United States tax" includes the NIIT, just as Article XXIV(7) provides that "income tax paid or accrued" to Canada includes Canadian provincial and local taxes. The NIIT cannot be offset by a Code-based foreign tax credit just as certain Canadian provincial and local taxes may not be creditable under the Code. Plainly, the scope of paragraph 1 itself broadens the United States taxes beyond those which a Code-based foreign tax credit can offset, just as it broadens the Canadian taxes beyond those which a Code-based credit can be claimed. As the Court of Federal Claims found, "[t]his alone is a complete refutation of the government's overall position." Appx31.

In the final analysis, as the Court of Federal Claims ruled, the Defendant's textual interpretation is *ad hoc* and lacking in a coherent principle. Following a consistent approach, the Court of Federal Claims correctly found that the U.S. Law Limitation does not restrict the Taxpayer's claimed treaty-based foreign tax credit in this case. The Defendant could not below, and cannot now, offer any logical theory to distinguish when the U.S. Law Limitation applies and when it does not. The Court of Federal Claims' textual analysis is not only sound, but is also the only textually plausible analysis that gives effect to all parts of Article XXIV(1) without rendering any language superfluous. That textual analysis results in a treaty-based foreign tax credit. The lower court's judgment in favor of the Taxpayer should be affirmed.

16

### 3. The U.S. Law Limitation Determines the Quantum of the Treaty-Based Credit and Does Not Restrict the United States Tax Against Which Such Credit Is Available

As indicated above, the Defendant's textually implausible reading of the U.S. Law Limitation as sometimes allowing and sometimes eliminating a treaty-based foreign tax credit does not withstand scrutiny. The more logical and textually plausible way of reading the U.S. Law Limitation that gives meaning to all the language of the Treaty is that the U.S. Law Limitation incorporates the statutory rules necessary to determine the quantum of the credit. This reading finds support in the Technical Explanation to the Canada Treaty.[8]

The Technical Explanation is issued by the Treasury Department and the parties agree is a useful guide to the interpretation of Article XXIV to the extent there is ambiguity in the Treaty's text. *See*, *e.g.*, Def. Br. at 36-38. The Technical Explanation demonstrates that the NIIT is a United States income tax covered by the Canada Treaty, a point that the Defendant has not disputed either before the lower court or on appeal. Appx28; Def. Br. at 43. The Technical Explanation also indicates that Article XXIV allows for treaty-based credits wider than those allowed in the Code. Appx29. On appeal, the Defendant accepts that it would be possible for there to exist a treaty-based foreign tax

---

[8] Treasury Department Technical Explanation of the Convention Between the Government of the United States of America and Canada with Respect to Taxes on Income and on Capital Signed at Washington, D.C. on September 26, 1980, as Amended by the Protocol Signed at Ottawa on June 14, 1983 and the Protocol Signed at Washington on March 28, 1984 (the "Technical Explanation").

credit in situations where a Code-based foreign tax credit would not apply – for example, to offset U.S. tax on U.S. source dividends for a U.S. citizen resident in Canada. *See* Article XXIV(5).

The Court of Federal Claims quoted from the Technical Explanation's discussion of the U.S. Law Limitation, stating Article XXIV(1) foreign tax credits

> are subject to the limitation of the Code as they may be amended from time to time without changing the general principle thereof. Thus, as is generally the case under U.S. income tax conventions, provisions such as Code sections 901(c), 904, 905, 907, 908 and 911 apply *for purposes of computing* the allowable credit under paragraph 1".

Appx30 (emphasis in original). The lower court concluded from this quotation that, in keeping with the Technical Explanation, "Paragraph 1 of Article XXIV contains no suggestion that it was intended to limit in any way the type of United States tax to which a foreign tax credit might apply." *Id*. Instead, the U.S. Law Limitation is computational in nature.[9]

---

[9]    The Joint Committee on Taxation's explanation of the Treaty, explaining the U.S. Law Limitation echoed this conclusion: "'[t]he credit is provided . . . only to the extent permitted under domestic law[,]' that means that '[t]he credit is *to be computed* in accordance with the provisions of and subject to the limitations of U.S. law." Explanation of the Proposed Income Tax Treaty Between the United States and Canada, *Joint Comm. On Taxation,* JCS-48-41 at 38 (1981). The Court of Federal Claims, citing the Joint Committee Report, concluded that "[t]his dovetails nicely, and is consistent, with the Technical Explanation's referencing specific [Code] provisions that could be employed to compute the quantum of any Treaty-based credit (but do not themselves nullify such a credit)." Appx32.

The Defendant on appeal nonetheless attempts to refute the Court of Federal Claims' conclusion by stating that the quoted Technical Explanation language "merely provides examples – signified by the term 'such as' – identifying some of the provisions that may 'apply for the purposes of computing' the credit; nowhere does it suggest that these are the *only* Code provisions that apply to the credit authorized by the Treaty." (Def. Br. at 39; emphasis in original.)  This statement is at the same time true and irrelevant. No doubt there are other provisions in the Code that are relevant in computing the credit.  That uncontroversial statement does not, however, address the Court of Federal Claims' holding above – that the Technical Explanation demonstrates that the U.S. Law Limitation focuses on the computation of the treaty-based credit; it does not suggest that Article XXIV(1) is intended to limit the type of United States tax eligible for a treaty-based foreign tax credit.  Importantly, as noted above, this is also the only textually plausible reading of the treaty text because it is the only reading that does not render any treaty language superfluous.

The Defendant fails to grasp that the Technical Explanation affirmatively provides that the U.S. Law Limitation deals with the quantum of the treaty-based credit referencing various Code provisions. The Defendant does not, and cannot, offer an effective rebuttal to the Court of Federal Claims' analysis.

19

### 4. Conclusion

In conclusion, the Court of Federal Claims correctly found that the Defendant's position is textually implausible as it makes the General Principle language superfluous. The Defendant does not apply the U.S. Law Limitation in a consistent and coherent way and offers no principled reason as to why the U.S. Limitation does not override Articles XXIV(3)-(7) if it overrides the definition of United States tax in Articles II(b) and III(1)(d). The Defendant fails to rebut the Technical Explanation language that shows the U.S. Law Limitation is designed to address the quantum of the credit that can offset the treaty-defined United States tax. The Court of Federal Claims did not err in its rationale that a treaty-based foreign tax credit should be allowed in this case to offset the NIIT and its judgment in favor of the Taxpayer should be affirmed.

## B. The plain text of Article XXIV(4)(b) also provides a foreign tax credit against the NIIT

An alternative rationale also permits the Taxpayer a treaty-based foreign tax credit in the case at bar. During the tax year at issue, the Taxpayer was a Canadian tax resident and a U.S. citizen. Article XXIV(1) of the Canada Treaty provides that its provisions are "subject to the provisions of paragraphs 4, 5 and 6". Articles XXIV(4)-(6) grant a special foreign tax credit regime to Canadian tax resident U.S. citizens in recognition of their overlapping tax obligations on their worldwide income.

Article XXIV(4)(b) provides that

> For the purposes of computing the United States tax, the United States shall allow as a credit against United States tax the income tax paid or accrued to Canada after the deduction referred to in subparagraph (a). The credit so allowed shall not reduce that portion of United States tax that is deductible from Canadian tax in accordance with subparagraph (a).

Article XXIV(4)(b) does not contain the U.S. Law Limitation that appears in Article XXIV(1). Breaking down its constituent parts shows that a credit is allowed:

- The Taxpayer was a U.S. citizen resident in Canada during the tax year in question;

- The parties agree that the NIIT is a "United States tax" that is covered by the Canada Treaty;

- The Taxpayer paid tax to Canada on the sale of Canadian real property and, as Canada had primary taxing rights on that income, Article XXIV(4)(a) does not apply.

The plain text of Article XXIV(4)(b) would therefore allow a treaty-based foreign tax credit even if the Defendant could somehow demonstrate that such a credit is not allowed under Article XXIV(1). *See Christensen v. United States*, 168 Fed. Cl. at 330 (adopting this holding with respect to similar language in the French treaty).[10] The plain text of Article XXIV(4)(b) does not include the

---

[10] The Court of Federal Claims in this case did not agree with this part of the holding in *Christensen*, concluding that "the U.S. Law Limitation applies to both paragraphs * * * [but] the U.S. Law Limitation does not preclude the Treaty-based foreign tax credit against the NIIT in either Paragraph 1 or 4(b)." Appx19.

U.S. Law Limitation so Defendant's textual contortions of Article XXIV(1) cannot apply to deny the Taxpayer, a U.S. citizen resident in Canada, a treaty-based foreign tax credit under Article XXIV(4)(b).

The District of Columbia Circuit Court of Appeals holding in *Kappus v. Comm'r*, 337 F.3d 1053 (2003) suggests that Article XXIV(4)(b) provides an independent basis for a treaty-based foreign tax credit. *Kappus* discussed a subsequently repealed provision relating to the alternative minimum tax (the "AMT") pursuant to which a foreign tax credit was limited to 90% of a taxpayer's AMT.[11]

The *Kappus* Court considered the argument as to whether Article XXIV(4)(b) would offer an independent basis for a foreign tax credit without regard to the U.S. Limitation of Law provisions. The United States argued in *Kappus* that paragraph 4 cited above "does not impose a substantive obligation on the part of the United States to grant a tax credit, but rather 'merely provides rules for determining the order in which deductions or credits for taxes paid to the other jurisdiction are applied when the same income is subject to tax by both.'" *Kappus* 337 F.3d at 1056. The *Kappus* Court was unconvinced by the defendant's argument, holding that "[t]he question of whether the [Canada Treaty] and statute can be harmonized as the government suggests is an extremely close one. It is not, however, a question that we need to resolve." *Id*.

---

[11]     Code Sec. 59(a). This computational limitation was repealed in 2004. American Jobs Creation Act of 2004, Pub. L. 108-357, Sec. 421(a)(1).

The *Kappus* Court ultimately held in favor of the government based on other grounds (namely, that the AMT provisions were enacted after the Canada Treaty was ratified Congress explicitly legislated treaty override with respect to the AMT foreign tax credit limitations).  *See also*, *Haver v. Comm'r*, 444 F.3d 656, 659 (D.C. Cir. 2006) ("*Kappus* raised interpretive difficulties that are not present here [as *Haver* involved the interpretation of the German/U.S. tax treaty]. The [Canada Treaty] provision we examined contained a clause subjecting its tax credit to the limitations of U.S. law, but it also expressly conditioned the tax credit and *arguably the limitation* itself on subsequent paragraphs of the treaty.")

In stark contrast to the AMT situation, the Taxpayer has argued, and the Defendant now concedes, that Congress did not legislate treaty override with respect to the NIIT.[12]  The language used in Article XXIV(4)(b) does not contain the U.S. Law Limitation of Article XXIV(1).  Rather, Article XXIV(1) rules are "subject to" the Article XXIV(4)(b) rules for U.S. citizens resident in

---

[12]     The Court of Federal Claims rejected the Defendant's argument that the enactment of the NIIT after the ratification of the Canada Treaty meant that there was implicit "treaty override" under the so-called "last-in-time rule". Appx15-20.  Defendant has jettisoned this argument on appeal.  (Def Br. at 14 n.7.)  While this concession is welcome, it did not stop the Defendant from advancing that same argument on appeal in *Christensen* (the companion case to this appeal).  Taxpayer assumes that the Defendant is not arguing in favor of the last-in-time rule through the back door when it suggests that this Court read its briefing in *Christensen* as a prelude to considering this case (Def. Br. at viii). Instead, by not challenging the Court of Federal Claims' ruling on this point, the Taxpayer assumes that the Defendant has belatedly realized the error of its original assertions in *Christensen*.

Canada. Article XXIV(4)(b) allows a U.S. citizen living in Canada a credit for Canada income taxes paid against that U.S. citizen's U.S. income tax liability which the treaty defines in Articles II and III to include the NIIT. This plain language cannot be read differently; it allows Plaintiffs also to claim a foreign tax credit against their NIIT under the terms of Article XXIV(4)(b) of the Canada Treaty without regard to the U.S. Law Limitation contained in Article XXIV(1).

### III.   The Extrinsic Materials Interpreting the Treaty Support the Taxpayer's Position.

The Court of Federal Claims noted other extrinsic evidence that supports the Taxpayer's claim to a treaty-based foreign tax credit to offset the NIIT. This includes not only the views of the Canadian Government, which are entitled to considerable weight, but also administrative guidance to the interpretation of the Canada Treaty as well as the preamble to the Treasury Regulations promulgated under the NIIT.

### A. The Canadian Government's View that A Treaty-Based Credit Should Be Allowed Is Entitled to Significant Weight.

Article XXVI of the Canada Treaty contemplates that when the Canada and the United States competent authorities disagree on the interpretation of the Treaty, at a taxpayer's request, these officials will engage in a country-to-country negotiation to attempt to resolve the disagreement. In March 2019, the Taxpayer made such a request to attempt resolution of this admitted instance of double taxation. After more than four years of negotiations, no agreement could

24

be reached.  Contrary to the Defendant's view that no treaty-based foreign tax credit is allowed to offset the NIIT, Canada's view was that the United States must provide a foreign tax credit to prevent double taxation.  Appx378.

The Court of Federal Claims noted that Canada's view is highly persuasive, quoting the Supreme Court's decision in *El Al Israel Airlines v. Tseng,* 525 U.S. 155 (1999); *see also Air France v. Saks*, 470 U.S. 392, 404 (1985); *Abbott v. Abbott*, 560 U.S. 1, 16 (2010) ("the 'opinion of our sister signatories' * * * are 'entitled to considerable weight.'").  On appeal, the Defendant attempts to distinguish the Supreme Court's holding in *El Al Israel Airlines* on the basis that the interpretation of the Warsaw Convention at issue was agreed upon by multiple foreign courts rather than by foreign executives. (Def. Br. at 46.)  This distinction is entirely one of the Defendant's own creation and finds no support in any case law.  Indeed, the *Kolovrat* decision referenced diplomatic notes exchanged between a foreign sovereign and the United States to support the interpretation of a bilateral treaty.  *Kolovrat*, 366 U.S. at 195; *see also Sumitomo Shoji America Inc. v Avagliano*, 457 U.S. 176 (1982) (diplomatic note from Japanese government in support of the interpretation of a bilateral treaty between the United States and Japan given great weight).

Moreover, the soundness of the Canadian Government's position is reinforced by the fact that Canada is required under Article XXIV(2) to offset

the NIIT against Canada tax where the United States has primary taxing rights.[13]

Indeed, the Canadian Government's position exhibits the reciprocity that would

typically accompany a tax treaty where Canada provides a credit against Canada

tax for all United States taxes on income, including the NIIT in exchange for the

United States providing a credit against United States taxes on income when

Canada has primary taxing rights.  *See O'Connor v. United States*, 479 U.S. 27,

31 (1986) (treaties are based on reaching reciprocal arrangements and "there is

no conceivable reason why this hypothetical 'your-sovereignty-for-mine

negotiating strategy would escalate into a demand that [one treaty partner]

would yield more sovereign prerogatives than it was asking [the other treaty

partner] to forgo * * *.")  For these reasons, the Court of Federal Claims

properly accorded considerable weight to the Canadian Government's views.

## B. Other Authorities Support a Treaty-Based Credit To Offset the NIIT.

The Court of Federal Claims noted other extrinsic evidence that supports

the Taxpayer's claim to a treaty-based foreign tax credit to offset the NIIT:

- The Letter of Submittal from the President to the United States
  Senate shows that the intention of Article XXIV is to avoid double
  taxation and to provide a special foreign tax credit regime to U.S.

---

[13]     In a simple example, if the property Taxpayer sold had been located in the United States, rather than Canada, the United States would have had primary taxing rights.  Canada would have been obligated to provide a credit against Canada tax equal to both the regular U.S. capital gains tax and the NIIT.  Article XXIV(2).

citizens who are Canadian tax residents. The Defendant discounts this statement asserting that the "complete elimination of double taxation was never the goal of the Treaty." (Def. Br. at 45.) While some instances of double taxation may be inevitable when trying to harmonize two countries' taxation systems (*e.g.*, foreign exchange differences, realization timing issues, etc.), the goal of the Canada Treaty remains, as the title to Article XXIV states, the elimination of double taxation. Opting for the interpretation that perpetuates the evil of double taxation rather than the interpretation that eliminates it, despite a Presidential statement to the contrary, is plain error.

- The preamble to regulations that provided that "an analysis of each United States income tax treaty would be required to determine whether the United States would have an obligation to provide a credit against [the NIIT]." The Court of Federal Claims concluded that "[t]he clear and necessary implication is that a treaty-based credit *may* apply to the NIIT and, thus, the NIIT's placement in Chapter 2A of the [Code] (*i.e.,* outside of Chapter 1) does not preclude a foreign tax credit." Appx34 (emphasis in original). The Defendant does not address this point on appeal.

In summary, the Court of Federal Claims' ruling in favor of a treaty-based foreign tax credit in the case at bar not only finds firm support in the text of the

27

Canada Treaty, but also in extrinsic evidence. The extrinsic evidence shows that the U.S. Law Limitation points to the necessary computational rules to determine the amount of the credit under Article XXIV. This conclusion is further supported by the views of the Canadian Government. The Defendant has no principled answer to the contrary and the Court of Federal Claims' ruling in favor of a treaty-based foreign tax credit should therefore be affirmed.

———————————————————

Both the language and logic of Articles XXIV(1) and (4)(b) provide for a treaty-based foreign tax credit against the NIIT for U.S. taxpayers resident in Canada, even though there is no Code-based foreign tax credit against the NIIT. To conclude otherwise would mean that these treaty provisions have no effect and would be contrary to the stated purpose of the Canada Treaty – to avoid double taxation.

## CONCLUSION

For the reasons set forth above, the Court of Federal Claims' judgment should be affirmed on the basis that Articles XXIV(1) allows the Taxpayers a treaty-based foreign tax credit to offset the NIIT or, in the alternative, because such a treaty-based foreign tax credit is allowed under Article XXIV(4)(b).

At the time the Defendant filed its Notice of Appeal, the Taxpayer filed a settlement offer with the Defendant, which the Defendant did not accept. As a result, under Code Sec. 7430, the Taxpayer is entitled to attorney fees for the costs associated with defending this appeal and requests that the case be remanded to the Court of Federal Claims for the determination of that award.

Respectfully submitted,

/s/ Stuart E. Horwich
Horwich Law LLP
20 Old Bailey, 5th Floor
London  EC4M 7AD
011 44 20 8057 8013
seh@horwichlaw.co.uk

/s/ Max Reed
Suite 900 1788 West Broadway
Vancouver, British Columbia
Canada V6J 1Y1
604-283-9301
max@polaristax.com

Counsel for Plaintiffs