No. 25-1563

*In the*

# United States Court of Appeals
## For the Federal Circuit

PAUL BRUYEA,

*Plaintiff–Appellee,*

v.

UNITED STATES,

*Defendant–Appellant.*

On Appeal from the Judgment of the
United States Court of Federal Claims, No. 24-1284
Judge Matthew H. Solomson

---

**BRIEF OF *AMICI CURIAE*
H. DAVID ROSENBLOOM AND FADI SHAHEEN
IN SUPPORT OF APPELLEE AND AFFIRMANCE**

---

ELIZABETH J. STEVENS
CAPLIN & DRYSDALE, CHARTERED
1200 NEW HAMPSHIRE AVENUE, NW
8TH FLOOR
WASHINGTON, DC 20036

*Attorney for Amici Curiae*

September 9, 2025

# CERTIFICATE OF INTEREST

1. Provide the full names of all entities represented by undersigned counsel in this case.

    H. David Rosenbloom

    Fadi Shaheen

2. Provide the full names of all real parties in interest for the entities.

    N/A

3. Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

    N/A

4. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.

    None.

5. Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 475.5(a)?

    N/A

6. Provide any information required under Fed. R. App. P. 26.1(b) and 26.1(c).

    N/A

# TABLE OF CONTENTS

Interest of the Amici Curiae ................................................................................. 1

Introduction .......................................................................................................... 2

Argument .............................................................................................................. 4

1. The Treaty Text .......................................................................................... 4

2. Article XXIV's "General Principle": Allowance of a Credit ........................... 11

3. Reciprocity ................................................................................................ 12

Conclusion .......................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Christensen v. United States*,
   168 Fed. Cl. 263 (2023) ......................................................................... 2, 3, 4, 6

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*,
   484 U.S. 365 (1988) ............................................................................................ 4

*United States v. Stuart*,
   489 U.S. 353 (1989) (Scalia, J., concurring) .................................................... 5

*Water Splash, Inc. v. Menon*,
   581 U.S. 271 (2017) ............................................................................................ 5

**Statutes**

I.R.C. § 901 ................................................................................................................ 9

I.R.C. § 904(a) ........................................................................................................... 7

I.R.C. § 904(c) ........................................................................................................... 7

I.R.C. § 1411 ............................................................................................................. 2

I.R.C. § 7806(b) ...................................................................................................... 10

**Treaties**

Convention Between the Government of the United States of America
   and the Government of the French Republic for the Avoidance of
   Double Taxation and the Prevention of Fiscal Evasion with
   Respect to Taxes on Income and Capital, Fr.-U.S., Aug. 31, 1994,
   1963 U.N.T.S. 67 (as amended through 2009) ................................................. 3

Convention Between the United States of America and Canada with
   Respect to Taxes on Income and on Capital, Can.-U.S., Sept. 26,
   1980, 1469 U.N.T.S. 189 (as amended through 2007) ............................. *passim*

**Other Authorities**

Fadi Shaheen, *How Reform-Friendly Are U.S. Tax Treaties?*, 41 BROOKLYN J. INT'L L. 1243 (2016) ...................................................................1

H. David Rosenbloom & Fadi Shaheen, *The BEAT and the Treaties*, 92 TAX NOTES INT'L 53 (2018) .......................................................................1

H. David Rosenbloom & Fadi Shaheen, *The TCJA and the Treaties*, 95 TAX NOTES INT'L 1057 (2019) ...................................................................1

H. David Rosenbloom & Fadi Shaheen, Toulouse: *No Treaty-Based Credit?*, 104 TAX NOTES INT'L 417 (2021) ...................................................1, 7, 10

H. David Rosenbloom & Fadi Shaheen, *Treaty Override: The False Conflict Between* Whitney *and* Cook, 24 FLA. TAX REV. 375 (2021) ..........................................................................................................1

Treas. Reg. § 1.901-2 (2022) .................................................................................9

Treas. Reg. § 1.901-2A (2022) ..............................................................................9

Treas. Reg. § 1.903-1 (2022) .................................................................................9

Treasury Department Technical Explanation of the Convention Between the Government of the United States of America and Canada with Respect to Taxes on Income and on Capital Signed at Washington, D.C. on September 26, 1980, as Amended by the Protocol Signed at Ottawa on June 14, 1983 and the Protocol Signed at Washington on March 28, 1984 (Apr. 26, 1984) ................................7

United States Model Income Tax Convention..........................................................3

United States Model Technical Explanation Accompanying the United States Model Income Tax Convention of November 15, 2006........................................................................................................11

## INTEREST OF THE AMICI CURIAE

H. David Rosenbloom and Fadi Shaheen ("Amici") are law professors who share an interest in the consistent, fair, and efficient administration of U.S. tax laws. Their scholarship focuses on U.S. international tax law and includes articles relating to the questions before the Court in this case.[1] Amicus H. David Rosenbloom is a former International Tax Counsel of the U.S. Treasury Department and Director of its Office of International Tax Affairs. He has negotiated numerous tax conventions (commonly referred to as "tax treaties") on behalf of the United States, including the tax treaty with Canada, and has regularly taught courses on international tax subjects, including tax treaties, at U.S. law schools and at academic institutions abroad. He is a practicing attorney and recently retired as the James S. Eustice Visiting Professor of Law and Director of the International Tax Program, a master-of-laws program, at New York University School of Law ("NYU"). Amicus Fadi Shaheen is a Professor of Law and Professor Charles Davenport Scholar at Rutgers University Law School

---

[1] H. David Rosenbloom & Fadi Shaheen, Toulouse: *No Treaty-Based Credit?*, 104 TAX NOTES INT'L 417-422 (2021) [hereinafter Rosenbloom & Shaheen, *Toulouse*]; H. David Rosenbloom & Fadi Shaheen, *The TCJA and the Treaties*, 95 TAX NOTES INT'L 1057-1070 (2019); H. David Rosenbloom & Fadi Shaheen, *The BEAT and the Treaties*, 92 TAX NOTES INT'L 53-63 (2018). *See also*, H. David Rosenbloom & Fadi Shaheen, *Treaty Override: The False Conflict Between* Whitney *and* Cook, 24 FLA. TAX REV. 375 (2021); Fadi Shaheen, *How Reform-Friendly Are U.S. Tax Treaties?*, 41 BROOKLYN J. INT'L L. 1243 (2016).

("Rutgers"). He teaches courses on U.S. international tax law and tax treaties (and other tax subjects) at Rutgers, at NYU, and abroad.

Amici support the position of Appellee. They file this brief to provide the Court with additional perspective on the issues presented. Amici believe this perspective will aid the Court in reaching an informed decision.[2]

## INTRODUCTION

This case concerns the interpretation of the income tax treaty between the United States and Canada[3] and, more specifically, of paragraph 1 of article XXIV (Elimination of Double Taxation) of that treaty.[4] The point at issue is whether article XXIV(1) provides a U.S. foreign tax credit against the liability of an individual U.S. citizen resident in Canada for the U.S. Net Investment Income Tax ("NIIT") imposed by section 1411 of the Internal Revenue Code (the "Code").

As noted by the Government, this issue is "the same legal issue" raised in *Christensen v. United States*, No. 24-1284, a case involving the income tax treaty

---

[2] No counsel for a party authored this brief in whole or in part and, apart from Amici, no person (including the parties and their counsel) funded the brief's preparation or submission. All parties have consented to its filing.

[3] Convention Between the United States of America and Canada with Respect to Taxes on Income and on Capital, Can.-U.S., Sept. 26, 1980, 1469 U.N.T.S. 189 (as amended through 2007) [hereinafter Canada Treaty].

[4] Unless stated otherwise, reference in the brief to articles is to articles of the Canada Treaty.

with France.⁵  In that case, which will be heard by the Court as a companion to this one, Amici filed a brief as Amici Curiae (the "*Christensen* amicus brief").  Amici noted in the *Christensen* amicus brief that the seemingly narrow issue has a broad reach:  It implicates the general question whether U.S. tax treaties provide for a foreign tax credit independent of the credit allowed by the Code.  Article XXIV(1) and related provisions⁶ of the Canada Treaty are similar to article 24(2)(a) and related provisions⁷ of the treaty with France, similar to the provisions of many other U.S. income tax treaties, and similar to article 23(2) and related provisions of the U.S. Model Income Tax Convention, which is used as a starting point for treaty negotiations with other countries.⁸

Amici view this case as having major significance for the U.S. tax treaty program.  They believe the court below reached the correct result, based on the correct analysis, in finding that a foreign tax credit is available against the NIIT by

---

⁵  Convention Between the Government of the United States of America and the Government of the French Republic for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital, Fr.-U.S., Aug. 31, 1994, 1963 U.N.T.S. 67 (as amended through 2009) [hereinafter French Treaty].

⁶  Canada Treaty, *supra* note 3, arts. I-IV, XXIV.

⁷  French Treaty, *supra* note 5, arts. 1-4, 24.

⁸  United States Model Income Tax Convention, arts. 1-4, 23, https://home.treasury.gov/system/files/131/Treaty-US-Model-2016_1.pdf [https://perma.cc/R3H3-Z94N].  The 2016 version of the United States Model Income Tax Convention is the most recent in a series of U.S. Models, the first of which was published in 1976.

3

reason of article XXIV(1). They urge this court to affirm the decision of the Court of Federal Claims.

## ARGUMENT

Much of the *Christensen* amicus brief is relevant here as well, and its contents will not be repeated.

The additional arguments made here are that the Government's position lacks plausible textual footing in article XXIV, is contrary to the general principle of article XXIV, and cannot be in accordance with the shared expectations of the treaty partners.

**1.   The Treaty Text**

A U.S. income tax treaty such as the Canada Treaty is not simply an expression of good will and general principles. To the contrary, a U.S. income tax treaty is a painstakingly negotiated and carefully crafted legal instrument comprising specific, precise provisions that are intended to fit together in a coherent whole. Their construction, like the construction of any statute, is a "holistic endeavor"[9] that

---

[9]   *Cf. United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988).

should give effect to each of those provisions.[10]  The construction of a treaty should also give effect to the shared expectations of the treaty partners.[11]

Article II (Taxes Covered) of the Canada Treaty identifies the taxes that the treaty covers.  Under paragraph 3, these include taxes substantially similar to those explicitly named in other paragraphs of article II but enacted after the treaty entered into force.  Article III (General Definitions) makes clear, in paragraph 1(d), that references to "United States tax" throughout the treaty, including in article XXIV(1), are to the U.S. taxes that appear in article II, including taxes not in existence at the time of the treaty's negotiation.  In article XXIV(2), Canada commits to granting credits for United States tax against Canadian tax and in article XXIV(1) the United States commits to granting credit for Canadian tax against United States tax, depending on the circumstances.[12]  The commitments are reciprocal and binding.

The Government opposes a U.S. credit for Canadian tax against the NIIT on the basis of language found in all modern U.S. treaties to the effect that when the

---

[10] *Water Splash, Inc. v. Menon*, 581 U.S. 271, 277-278 (2017) (treaty provision should be interpreted as having an effect and should not be superfluous).

[11] *United States v. Stuart*, 489 U.S. 353, 374 (1989) (Scalia, J., concurring) ("The question before us in a treaty case is what the two or more sovereigns agreed to, rather than what a single one of them, or the legislature of a single one of them, thought it agreed to.").

[12] The Canadian commitment is expressed in terms of a "deduction from tax payable in Canada," which is synonymous with "a credit against tax payable to Canada."

5

United States commits to a U.S. credit for taxes of a treaty partner, it does so "in accordance with the provisions and subject to the limitations" of U.S. statutory law. U.S. statutory law does not provide for a credit against the NIIT. The Government maintains that the lack of a credit under the Code constitutes a "limitation" of U.S. statutory law that precludes a credit under article XXIV(1) for Canadian tax against the NIIT.

Amici believe the legal question presented in this case (and in *Christensen*) is a textually simple one. Neither Congress nor the treaty partners articulated or implied that the treaty provides a U.S. foreign tax credit only against taxes eligible for a credit under the Code. There is no conflict or inconsistency between the absence of a statutory credit and the existence of a treaty credit.[13] As the Government now agrees, because paragraph 7 of article XXIV provides that "income tax paid or accrued to Canada" includes certain Canadian provincial taxes, article XXIV allows a treaty credit for those taxes even if they are not creditable under the Code.[14] This concession by the Government makes the textual interpretation even more straightforward.

---

[13] There is no question of a statutory override of the treaty in this case. The Government urged such a proposition in the court below but has abandoned that proposition on appeal. It is therefore agreed that the treaty and the NIIT can be harmonized.

[14] The Government conceded this point before the Court of Federal Claims and before this Court. *See, e.g.*, Appellant Br. at 22, 41-42. Other similar U.S. treaties that allow credits for otherwise noncreditable or possibly noncreditable foreign taxes

6

Article XXIV(1) of the Canada Treaty provides, in relevant part and with emphasis added:

> *In accordance with the provisions and subject to the limitations of the law of the United States (as it may be amended from time to time without changing the general principle hereof)*, **the United States shall allow to a citizen or resident of the United States . . . as a credit against the United States tax on income the appropriate amount of income tax paid or accrued to Canada** . . . .

The italicized clause is referred to hereinafter as the "U.S. law language" and the bold clause as the "operative language." With the exception of paragraphs 4, 5, and 6 of article XXIV,[15] there is no dispute that only the operative language of paragraph 1 allows a treaty credit. The operative language is subject to the U.S. law language, which applies statutory benefits and limitations to the treaty credit.[16]

---

include the treaties with Italy (regarding the Italian Imposta Regionale Sulle Attività Produttive (IRAP)) and the treaty with Mexico (regarding the now repealed Mexican Impuesto Empresarial a Tasa Única). *See* Rosenbloom & Shaheen, *Toulouse*, *supra* note 1, at 418 and references there.

[15] Paragraphs 4, 5, and 6 of article XXIV provide for special rules for U.S. citizens residing in Canada. There is a separate question whether in this case they provide for a treaty credit independent of paragraph 1.

[16] Statutory benefits are extended to the treaty credit by the "[i]n accordance with the provisions" language. One such benefit is in Code section 904(c), which allows the carryover to prior or subsequent years of creditable foreign taxes not credited in a year because of the limitation of Code section 904(a). Treasury Department Technical Explanation of the Convention Between the Government of the United States of America and Canada with Respect to Taxes on Income and on Capital Signed at Washington, D.C. on September 26, 1980, as Amended by the Protocol Signed at Ottawa on June 14, 1983 and the Protocol Signed at Washington on March 28, 1984 (Apr. 26, 1984), https://www.irs.gov/pub/irs-trty/canatech.pdf [https://perma.cc/C2JX-LEHF] (the "Technical Explanation").

The Government's theory is that "paragraph 1 of Article XXIV provides the general rule for allowing a credit by incorporating the Code's provisions and limitations, with the signatories adopting certain modifications to the general rule as specified and agreed to in subsequent paragraphs of Article XXIV."[17] But paragraph 7 of article XXIV does not purport to modify paragraph 1. It provides that "income tax paid or accrued to Canada," for which the operative language of paragraph 1 provides a credit "subject to the limitations of the law of the United States," includes certain Canadian provincial taxes even if they are not creditable under the Code. For article XXIV(1) to provide a credit for such taxes, it must be that lack of statutory creditability is not a "limitation" within the meaning of paragraph 1. As the court below correctly concluded, the U.S. law "limitations" language in paragraph 1 was intended to regulate computation of the treaty credit, not to deny a credit altogether.[18] A limitation limits; it does not eliminate.

---

[17] Appellant Br. at 41.

[18] The court below based its conclusion regarding the computational nature of the "limitations" on the Technical Explanation and other extrinsic evidence, but the conclusion can also be reached textually. There is no dispute that paragraphs 3-7 of article XXIV are meant to produce certain benefits that are not otherwise available. The operative language of paragraph 1 is needed for delivering the benefits of paragraphs 3 and 7. That would be true too with respect to the benefits of paragraphs 4-6, if the Government's position regarding these paragraphs is correct. It is hard to see how the operative language of paragraph 1 would deliver such results if the U.S. law language referred to "limitations" that are not just computational in nature.

The same logic and textual analysis apply to the NIIT. Section 901 of the Code provides for a statutory credit against U.S. taxes imposed by chapter 1 of the Code for foreign "income, war profits, and excess profits taxes" paid or accrued during the taxable year.[19] The NIIT is imposed by chapter 2A of the Code, and therefore is not eligible for a *statutory* foreign tax credit. The Government argues that the lack of statutory credit against the NIIT is a U.S. law "limitation" within the meaning of article XXIV(1) and thus precludes a treaty credit against the NIIT.

The NIIT, however, is not eligible for a foreign tax credit under the Code just as Canadian provincial taxes that are not "income, war profits, and excess profits taxes" are not creditable under the Code. Articles II(3) and III(1)(d) provide that "United States tax" includes the NIIT just as article XXIV(7) provides that "income tax paid or accrued" to Canada includes certain statutorily noncreditable Canadian provincial taxes. And article XXIV(1) allows a credit against "United States tax" subject to U.S. law "limitations" just as it allows a credit for "income tax paid or accrued to Canada" subject to U.S. law "limitations." The lack of statutory credit against the NIIT cannot be a U.S. law "limitation" within the meaning of paragraph 1

---

[19] Elaborate regulations define the term "income, war profits, and excess profits taxes." Treas. Reg. §§ 1.901-2, 1.901-2A, 1.903-1 (2022).

if the lack of statutory creditability for Canadian provincial taxes is not a U.S. law "limitation."[20]

The Government argues that the "determination whether a foreign tax paid to Canada is creditable against United States tax is a separate question from which United States taxes that credit may offset."[21] It is true that those questions are separate, but the analysis of those questions in the context of article XXIV(1) is the same. The operative language of article XXIV(1) provides for (i) the allowance to a US person, (ii) of a credit, (iii) against "United States tax," (iv) for the appropriate amount of "income tax paid or accrued to Canada." For the Government's argument to hold, the U.S. law language must apply to elements (i), (ii), and (iii) of the operative language, but not to element (iv). There is no textual basis for that proposition.

There is also no indication that the NIIT's placement in chapter 2A rather than in chapter 1 of the Code was intended to have any relevance to tax treaties.[22] Congress said nothing in that respect, in the statute or in the legislative history of the statute. Since the text of the treaty provides for a credit against the NIIT and

---

[20] *See* Rosenbloom & Shaheen, *Toulouse*, *supra* note 1, at 421 for similar analysis regarding the IRAP under the treaty with Italy.

[21] Appellant Br. at 41-42.

[22] *See also* I.R.C. § 7806(b) ("No inference, implication, or presumption of legislative construction shall be drawn or made by reason of the location or grouping of any particular section or provision or portion of this title . . . .").

10

Congress did not express any position in this regard, the Government's position that there is no such credit is untenable.

**2.    Article XXIV's "General Principle": Allowance of a Credit**

Paragraph 1 of article XXIV states that the U.S. foreign tax credit it describes is allowed "in accordance with the provisions and subject to the limitations of the law of the United States." It goes on, however, to add: "as it may be amended from time to time without changing the general principle hereof." The Model Technical Explanation of the U.S. Treasury Department, elaborates:[23] "so long as the general principle of the Article, that is, the allowance of a credit, is retained." It concludes: "Thus, although the [Model] Convention provides for a foreign tax credit, the terms of the credit are determined by the provisions, at the time a credit is given, of the U.S. statutory credit."

The words of the Model Technical Explanation do not appear in the Technical Explanation of the Canada Treaty but the reference to "the general principle hereof" appears in both documents. That "general principle" is "the allowance of a credit." Denying a treaty credit against the NIIT is not consistent with "allowance of a credit." And there is absolutely no reason to strain for an interpretation that such a

---

[23] United States Model Technical Explanation Accompanying the United States Model Income Tax Convention of November 15, 2006, art. 23(2), https://home.treasury.gov/system/files/131/Treaty-US-Model-TE-2006.pdf [https://perma.cc/76DS-8AQX]. There is as yet no technical explanation to the most recent 2016 U.S. Model Income Tax Convention.

11

denial is the result of a "provision" or "limitation" of U.S. statutory law and on that basis consistent with "allowance of a credit." Congress did not mandate, or suggest, such an interpretation. The purpose of the treaty is to eliminate double taxation, and an interpretation that creates double taxation is hardly consistent with that purpose.

### 3.  Reciprocity

Nor can the Government's interpretation possibly be what the treaty partners intended when they negotiated the treaty. The Government never disputes (or even mentions) the fact that its position makes the treaty nonreciprocal: When the first right of taxation belongs to the United States (for example, with respect to a U.S. citizen resident in Canada who realizes gain from a disposition of U.S. real property), Canada is required by the treaty to grant a credit *for* the NIIT, along with other components of United States tax, against Canadian tax. When Canada has the first right of taxation—for example, with respect to a U.S. citizen resident in Canada who realizes gain from a disposition of Canadian real property (such as Mr. Bruyea)— the Government argues for no credit against the NIIT. Canada would never have accepted such a nonreciprocal proposition in treaty negotiations. The Government's position is not only contrary to the treaty text; it calls for nonreciprocal double taxation in the latter situation.

This is a singularly unappealing interpretation of an international agreement that the treaty partners intended and designed to avoid double taxation. It is hardly a plausible reflection of their intentions.

## CONCLUSION

In short, the position espoused by the Government lacks support in language, policy, and common sense. The court below was correct to reject it.

For the reasons set forth above, the judgment of the Court of Federal Claims should be affirmed.

Respectfully submitted,

*/s/ Elizabeth J. Stevens*
Elizabeth J. Stevens
Caplin & Drysdale, Chartered
1200 New Hampshire Avenue NW
8th Floor
Washington, DC 20036
Telephone: (202) 862-5000
Email: estevens@capdale.com
